[Civ. No. 38020. Second Dist., Div. Five. Apr. 7, 1972.]

KEN ADDINGTON, Plaintiff and Appellant, v.
INDUSTRIAL INDEMNITY COMPANY, Defendant and Respondent.

[Civ. No. 38884. Second Dist., Div. Five. Apr. 7, 1972.]

MAUDE B. WHITESIDE, Plaintiff and Appellant, v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant and Respondent.

[Civ. No. 38885. Second Dist., Div. Five. Apr. 7, 1972.]

IRVIN C. CHITTY, Plaintiff and Appellant, v.
MISSION INSURANCE COMPANY, Defendant and Respondent.

[Civ. No. 38933. Second Dist., Div. Five. Apr. 7, 1972.]

GILBERT LEON PINEIRO, Plaintiff and Appellant, v.
PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant and Respondent.

(Consolidated Appeals.)

## COUNSEL

David Daar, Leon Perlsweig and Jerome Supkoff for Plaintiffs and Appellants.

Thelen, Marrin, Johnson & Bridges, Robert K. Worrell, Harry D. Palmer, Henry E. Kappler for Defendants and Respondents.

T. Groezinger, James Vonk and Herbert Lasky as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

KAUS, P. J.—Four plaintiffs, each suing on behalf of himself and "all other persons similarly situated," appeal from summary judgments entered in favor of the various defendants. The cases are consolidated for hearing in this court.

### FACTS — SUPERIOR COURT

We shall confine our statement of facts to those which appear in our record in the case of Addington, et al., vs. Industrial Indemnity Company, et al.[1] None of the procedural differences between that case and the other three has any bearing on any issue before us.

---

[1] Nevertheless whenever in this opinion we speak of "plaintiffs" or "defendants," we refer to all four plaintiffs and all four defendants.

Herewith a summary of Addington's complaint, which was filed on behalf of himself and members of the class whom he purports to represent, the class being composed of persons who have in the past received awards from the Workmen's Compensation Appeals Board, or its predecessor, the Industrial Accident Commission, in proceedings before the board in which defendant Industrial Indemnity Company was a defendant by virtue of having insured the employer.[2] Each award was made after section 5800 of the Labor Code was amended in 1945 to provide for interest on awards. Neither plaintiff, nor any member of the class, was ever paid any interest. In plaintiff's case the unpaid interest on an award of $4,300 amounted to $20.90. The failure to pay interest was caused by a policy and practice of defendant not to pay interest on awards. By law payments received were, however, applied first to extinguish interest and only then credited against the principal due. (Civ. Code, § 1479.) Thus the failure to pay interest, as such, left unpaid an amount of principal equal to the amount of interest due. The aggregate amount thus owed by defendant to plaintiff and the members of his class exceeds $250,000.

The complaint further alleges that, because it was economically unfeasible for any plaintiff to comply, the court should dispense with the requirement of section 5806 of the Labor Code making the entry of superior court judgments on unpaid awards conditional upon the filing of a certified copy of the award. In fact the pursuit of defendant's policy of not paying interest on awards is made possible by the economic realities which make it impracticable to pursue the small unpaid portion of each particular award.[3] None of the members of the class has a plain, speedy or adequate remedy other than the maintenance of a class action.

A second cause of action realleges the first and adds allegations attempting to justify an award of punitive damages.

On March 17, 1969, defendant demurred to the complaint, claiming that the superior court lacked jurisdiction, that no cause of action for class or any other relief was stated and that, in any event, relief was barred

---

[2]The other three appeals merely involve different class representatives as plaintiffs and different insurers as defendants.

[3]Section 5806 of the Labor Code reads as follows:

"Any party affected thereby may file a certified copy of the findings and order, decision, or award of the appeals board with the clerk of the superior court of any county. Judgment shall be entered immediately by the clerk in conformity therewith." The cost of obtaining a certified copy of a one-page award is $1.50. Each additional page costs 75¢. (Lab. Code, § 127.) We have not been able to find any statutory provision pursuant to which the board applicant who must take his award to the superior court for entry, can recover the cost of obtaining a certified copy. Thus, quite apart from the expenditure of time, let alone attorney's fees, any attempt to collect unpaid interest of less than $1.50, is doomed to cost money.

by the statute of limitations. The demurrer was overruled on May 14, 1969.[4] A petition for a writ of prohibition was denied, without opinion, by division two of this court on June 17, 1969, and a petition for hearing in the Supreme Court was denied by that court on July 16, 1969. Defendant answered by way of a general denial and eight affirmative defenses on July 31, 1969.

During and after these superior court maneuvers, certain proceedings had taken place before the board. Their outcome encouraged defendant to file a notice of motion for summary judgment on September 23, 1970. The motion was accompanied by various exhibits showing what had taken place before the board. The gist of the motion was that the entire problem was now res judicata. It was granted on October 5, 1970. Summary judgment and this appeal followed in due course.

## Facts — Workmen's Compensation Appeal Board

Meanwhile, back at the board, this is what had happened: three days after filing his complaint in the superior court, plaintiff, again acting on behalf of the same class, filed an application which referred to the superior court action just filed. He then proceeded to apply for the preparation of a

---

[4]The ruling, which was made by Judge Kenny, was accompanied by a brief opinion which is worth preserving:

"Each plaintiff in each of the above-named actions has brought suit in behalf of himself and all other persons similarly situated. A demurrer has been filed by each of the defendant compensation carriers. . . .

"The law of class actions in California is not the same since November 15, 1967, when a unanimous Supreme Court reversed the Los Angeles Superior Court in *Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695.

"Commenting on the *Daar* case, Prof. Phillip Johnson said (56 Cal.L.Rev. 1640):

" 'This procedural device (the class action) is particularly attractive in cases where a large group has been injured, but in which each member of that group has such a small stake that separate actions would be financially unfeasible.'

"In the cases at bar the dimensions of the individual claims show the financial unfeasibility of separate actions. They range from a minimum of 35 cents for Donald L. Marlow in action No. 948119 to a maximum of $20.90 for Ken Addington in action No. 948115.

"It is interesting to note that the California Supreme Court has long been innovative in dealing with the unique problems presented by class suits. In 1850, it authorized a class action in *Von Schmidt* v. *Huntington,* 1 Cal. 55, quoting from Lord Cottenham in *Taylor* v. *Salmon* at p. 67:

" 'It is the duty of the court to adopt its practice and course of proceeding as far as possible to the existing state of society, and to apply its jurisdiction to all those new cases, which from the progress daily making in the affairs of men, must continually arise, and not, from too strict an adherence to forms and rules established under very different circumstances, decline to administer justice and *to enforce rights for which there is no other remedy.'* (Italics supplied.)

"All of the demurrers in the above numbered matters . . . are overruled with 30 days' leave to answer. . . ."

single award against defendant, establishing the identities of the class members and the dates and amounts of the awards which had previously been made in their favor. This was perhaps asked for in anticipation of the possibility that the superior court would not permit plaintiff and the members of his class to omit compliance with section 5806 of the Labor Code. (See fn. 3, *supra*.) After an adverse decision by a referee,[5] plaintiff sought reconsideration which was granted. On February 16, 1970, the board, sitting in bank, filed a lengthy opinion which resulted in the denial of any relief.[6]

In its opinion the board first decided that it did have authority to entertain class actions. It then went on, however, to hold that plaintiff had not stated "a proper claim for class suit relief."

Various reasons for this result were adduced by the board. First it held that, unlike in *Daar* v. *Yellow Cab Company*, 67 Cal.2d 695, 713-715 [63 Cal.Rptr. 724, 433 P.2d 732], substantial benefits would not result from class litigation. That was so, said the board, because each member of the class could seek an order under board rule 10832[7] requiring the defendant to show cause why the full award had not been paid; further, since the

[5]The referee's breezy ruling was based on section 10450 of title 8 of the California Administrative Code which requires each petition to contain the title and number of the case. Plaintiff's petition obviously failed to comply with the rule, since its very purpose was to get the board to help him compile a list of the members of his class. The referee, therefore, did not even reach what the board, later, considered to be the threshold question, namely whether the board was authorized to entertain class petitions. He held, in effect, that before one could even try to petition the board for class relief, separate petitions for each member of the class had to be filed!

[6]The board opinion is reported in 35 Cal. Comp. Cases 39. It appears from its body that there were nine identical proceedings then pending before it, only three of which are involved in this consolidated appeal. The fourth matter before us (Pineiro v. Pacific Employers Insurance Company, 2d Civil No. 38933) was the subject of a later board opinion which merely referred to and followed the one summarized in our opinion.

[7]Section 10832 of title 8 of the California Administrative Code reads as follows: "The Appeals Board or referee may, upon the request of a complaining party, issue an order to show cause directing the employer or insurance carrier to appear and show cause why there has not been compliance with the order, decision, or award of the Appeals Board." Just what plaintiffs could have accomplished by a successful order to show cause proceeding is obscure. The entire text discussion concerning rule 10832 in Hannah, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1970), found in section 6.05 [5] reads as follows:

"The Appeals Board or a referee may, upon the request of a complaining party, issue an order to show cause directing the employer or insurance carrier to appear and show cause why there has not been compliance with the order, decision, or award. [Footnote omitted.] This rarely invoked procedure would seem to be designed to compel the furnishing of other than cash benefits. It can become a more effective means of enforcement if coupled with a request for imposition of a penalty for unreasonable delay."

amounts paid had first to be applied against unpaid interest, compensation had been left payable, which permitted the imposition of a 10 percent penalty under section 5814 of the Labor Code. These remedies, said the board, were available regardless of the size of the unpaid amount.

Nor, thought the board, would a class action avoid multiplicity of litigation: obviously litigation before the board was already pending in each case.

Further, compliance with plaintiff's application would require 146 working days by every person employed by the board, during which time nothing else could be accomplished.[8] Finally the board's opinion expresses fear that to allow a class proceeding before it would amount to an intermeddling in the "thousands of . . . attorney client relationships" involved in the existing proceedings before the board.[9]

Plaintiff, too, sought help from this court; however his petition for a writ of review was denied, without opinion, by division one on July 20, 1970. The Supreme Court denied a hearing on August 19, 1970.

### DISCUSSION

At the outset it should be noted that the legal sufficiency of the superior court complaint is not before us. The sole ground on which the summary judgment was based was the claimed conclusive effect of the board's decision of February 16, 1970, denying relief. Nor do defendants, in this court, seek to protect their judgments by arguing that the complaints are fatally defective.

Turning to the merits of the res judicata claim, it is well to focus at once on the limited relief plaintiffs requested from the board. Neither on behalf of themselves, nor on behalf of any member of their classes, did they ask for any judicial relief in excess of what was already on the board's books. They merely wanted the board to make it economically feasible to translate existing unpaid awards into dollars and cents by enabling them, through

[8]The board estimated that plaintiff's application together with others heard at the same time involved "approximately 80% of the carriers underwriting workmen's compensation insurance in this state." The abstracting of awards would involve about 292,400 decisions. The board's opinion does not estimate how many working days it would take if each member of the class proceeded to file an order to show cause under board rule 10832 or sought a penalty under section 5814 of the Labor Code.

[9]It is obvious that in considering this problem the board assumed that the attorney-client relationships involved possessed a vitality far greater than was apparently the case. This entire proceeding, if justifiable at all, finds its *raison d'etre* in the fact that a shortage of a few dollars is not worth pursuing and that, in point of fact, hundreds or thousands of attorneys have not pursued it and thus, in effect, have abandoned their clients.

the medium of a single award, to obtain a single certified document with which to comply with section 5806 of the Labor Code. The appeal to the board was therefore directed to its implied administrative power to order its employees to perform an essentially clerical act; the board's judicial function was never invoked.

■ There can be no question that in a proper case a final decision by the board must be given res judicata effect in the superior court. (*French* v. *Rishell*, 40 Cal.2d 477, 480 [254 P.2d 26]; cf. *Scott* v. *Industrial Acc. Com.*, 46 Cal.2d 76, 83 [293 P.2d 18].) Nor can it be doubted that the doctrine of res judicata applies, again in a proper case, to final rulings on points of law and not just to determinations of fact. (*Olwell* v. *Hopkins*, 28 Cal.2d 147, 150-153 [168 P.2d 972] ["A decision on the merits, however, is not necessarily a decision upon the facts."]; *Goddard* v. *Security Title Ins. & Guar. Co.*, 14 Cal.2d 47, 51-55 [92 P.2d 804]; *Sterling* v. *Galen*, 242 Cal.App.2d 178, 182-185 [51 Cal.Rptr. 312]; Rest. Judgments, §§ 50, 70.)[10] ■ Finally, whatever we may privately think about the merits of the board's "let them eat cake" approach to this problem, we recognize that, subject to certain exceptions (e.g., *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control*, 57 Cal.2d 749, 757-759 [22 Cal.Rptr. 14, 371 P.2d 758]; 4 Witkin, Cal. Procedure (2d ed. 1971) § 216, pp. 3351-3353), "[a]n erroneous judgment is as conclusive as a correct one." (*Martin* v. *Martin*, 2 Cal.3d 752, 763 [87 Cal.Rptr. 526, 470 P.2d 662]; *Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 640 [134 P.2d 242].)

■ We think, however, defendants' assertion that the board's ruling has a res judicata effect on the superior court actions is based on a rather generous view of what the board purported to adjudicate. They claim that the board held that workmen's compensation applicants, whose awards have not been satisfied as to interest, cannot pursue what remedy they have in a

---

[10]The res judicata problems presented by this case are clearly *sui generis*. (Cf. *Keidatz* v. *Albany*, 39 Cal.2d 826, 828 [249 P.2d 264].) No case involving class litigation before different tribunals, which stand in the same relationship as the board and the superior courts of this state, has been brought to our attention. It is therefore difficult to determine whether defendants' position is more aided by analogies to cases involving a claim of res judicata as a complete bar, or whether authorities discussing the collateral estoppel aspect of the doctrine are most in point. (Cf. *Sanderson* v. *Niemann*, 17 Cal.2d 563, 573-575 [110 P.2d 1025].) The problem is further complicated by the circumstance that board relief was denied on a question of law, rather than on one of fact. (See *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control*, 57 Cal.2d 749, 757-759 [22 Cal.Rptr. 14, 371 P.2d 758].) We doubt that it would be helpful were we to attempt to find a neat pigeonhole in prior law into which to fit the legally shapeless issue before us. Rather our approach attempts a practical solution of a unique problem, which does no violence to the values protected by the doctrine of res judicata in all of its forms, yet prevents a miscarriage of justice. We leave it to future authorities to determine which particular strawman this opinion knocks down.

class action before any tribunal. No such broad issue was ever presented to the board. Indeed we may safely assume that the board would have shied away from deciding any such question, obviously outside of its jurisdiction. The basic class action was being pursued in the superior court. Before the board, plaintiffs merely sought ancillary relief which, if granted, would make it easier for them to obtain their superior court remedy. As noted, the complaint there revealed a failure by plaintiffs and the members of their class to comply with section 5806 of the Labor Code. Obviously on any eventual appeal plaintiffs would be in better shape if in the meanwhile they found themselves able to comply with section 5806 and to amend their complaints accordingly. Hence they asked for the purely ministerial relief of the preparation of a single award. For reasons sufficient to the board, that relief was denied. However, we do not see how that denial can be escalated into a holding, binding on the superior court, that it may not proceed to try the pending class actions on the merits. If, ultimately, it should be held that plaintiffs' failure to comply with section 5806 of the Labor Code is fatal, then, of course, the board's refusal to grant class relief may indeed turn out to have been decisive. Today, however, the question of the sufficiency of the complaints which seek to excuse compliance with section 5806 is, as we have pointed out, not before us. Assuming that the cases go to trial on the present pleadings, plaintiffs will, of course, have to show at some time just who the members of the class are and how much each of them is owed by defendants. This proof can obviously be accomplished without the kind of cooperation from the board that was refused in its February 16, 1970 decision.

It is worth noting, if further demonstration of the inapplicability of the doctrine of res judicata were required, that the reasons which the board gives for not permitting the class relief prayed for are peculiar to its own jurisdiction and not necessarily applicable to the superior court. Thus the board holds, right or wrong, that the enforcement remedies provided by board rule 10832 and section 5814 of the Labor Code are "just as advantageous and of just as much benefit to each applicant, as any form of class litigation." Both types of proceedings are conducted before the board, not in the superior court. Next the board points out that class relief by it would not avoid multiplicity of litigation, since each member of the class already has a workmen's compensation proceeding pending. Again, right or wrong,[11] the board points to matters pending before it, but not in the superior court.

---

[11] With all respect we think that this argument misses the point that workmen's compensation applicants cannot buy groceries with unsatisfied awards and that payment can only be compelled by a levy of execution based upon a superior court judgment on the award.

Obviously the further reason for denying relief based upon the amount of work it would entail for the board's staff is most peculiar to the board's internal problems and has nothing to do with the merits of the superior court litigation. Finally, the board's last point, that to grant class relief would amount to the sanctioning of interferences with numerous attorney-client relationships, again raises a problem peculiar to the board's own cases. The record reveals no such relationship between any member of plaintiffs' classes and any attorney in any superior court proceeding—except, of course, with respect to the four class representatives involved in these appeals.

The judgments, and each of them, are reversed.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied April 25, 1972, and respondents' petition for a hearing by the Supreme Court was denied June 7, 1972. Peters, J., was of the opinion that the petition should be granted.