[Civ. No. 46152. Second Dist., Div. One. June 25, 1976.]

FRED H. HONE, Plaintiff and Appellant, v.
CLIMATROL INDUSTRIES, INC., Defendant and Respondent.

516

**COUNSEL**

Mohi, Morales & Glasman, Mohi & Glasman, Gary Mohi and Frank Morales for Plaintiff and Appellant.

Shield & Smith and Ingall W. Bull, Jr., for Defendant and Respondent.

[June 1976]

## OPINION

**HANSON, J.—**

### THE CASE

Employee/plaintiff/appellant Fred H. Hone (hereinafter employee and/or plaintiff) on March 11, 1970, filed a complaint for personal injuries based on negligence and strict liability against third-party defendant/respondent Climatrol Industries, Inc., a corporation (hereinafter third party and/or Climatrol). The complaint alleged that on March 24, 1969, while employee/plaintiff was employed as a stationary engineer by the County of Los Angeles (hereinafter employer and/or County) at Biscailuz Center, he was injured when his clothing became entwined in an unguarded rotating shaft in an air conditioning blower apparatus manufactured by third-party Climatrol.

Third-party defendant Climatrol answered the complaint by way of general and specific denials and asserted the affirmative defenses of contributory negligence and assumption of risk on the part of plaintiff. It also alleged negligence of plaintiff's employer County and fellow employees which precluded recovery for any payments made to plaintiff by County's workers' compensation insurer State Compensation Insurance Fund (hereinafter carrier and/or State Fund).

On November 30, 1970, carrier State Fund filed a "Notice of Lien under Labor Code Sections 3850 to 3864."[1]

On December 21, 1970, with leave of court, carrier State Fund filed a "Complaint in Intervention (Pursuant to Labor Code Section 3853)" which alleged that it insured employer County under a policy of workers' compensation insurance; that pursuant to said policy it had paid certain

---

[1]The notice of lien stated as follows: "YOU AND EACH OF YOU ARE HEREBY NOTIFIED that State Compensation Insurance Fund claims a first lien, pursuant to Labor Code sections 3850 to 3864 upon any settlement or judgment rendered herein in favor of plaintiff in the amount of $15,158.02, consisting of $6,875.00 for compensation indemnity and $8,283.02 for medical benefits provided, plus interest thereon according to law; and in any additional amount it may become obligated to pay under the provisions of the Labor Code of the State of California."

workers' compensation benefits to plaintiff for disability indemnity and for medical benefits as a proximate result of defendant third-party Climatrol's negligence and may be obligated to pay additional sums in the future and prayed for the sums expended and to be expended and reasonable attorney fees.

On January 25, 1971, third-party defendant-in-intervention Climatrol filed its answer to State Fund's complaint in intervention, denied generally and specifically the allegations and alleged the affirmative defenses of assumption of risk on the part of plaintiff and negligence on the part of plaintiff, plaintiff's employer County and fellow employees as a bar to recovery.

On September 17, 1974, a trial by jury commenced. Third-party defendant and defendant-in-intervention Climatrol on the fifth day of trial settled the complaint in intervention of carrier State Fund for a consideration of $10,000 in exchange for a dismissal of the complaint in intervention without prejudice and an assignment of its lien rights. Counsel made a full disclosure to the court and plaintiff's attorney of the nature and purpose of the settlement agreement.

The court reporter's transcript of September 23, 1974, contains the following colloquy in chambers, all counsel present:

"THE COURT: Counsel have a stipulation they want to make on the record.

"MR. FAYNE: Plaintiff in Intervention, State Compensation Insurance Fund, is going to dismiss against Defendant in Intervention, Climatrol Industries Incorporated, without prejudice and retain its full lien rights in this Cause of Action. Is that correct, Counsel?

"You agree to a dismissal without prejudice?

"MR. BULL: That's correct.

. . . . . . . . . . . . . . . . . .

"MR. FAYNE: . . . The nature of the settlement, as I understand it now, is we are withdrawing without prejudice.

"This will allow the defendant to prove up his case of *Witt versus Jackson* and have the setoff as a matter of law. If there is no setoff as a matter of law by his proving up the assumption of the risk by the employer, then the State Compensation Insurance Fund will assert its lien rights prior to distributing the judgment should the plaintiff prevail in this case.

"THE COURT: Then you haven't made a settlement?

"MR. FAYNE: We have made an agreement. I haven't finished my statement of the settlement.

"And at that point, we will pay to the defendant in intervention the full amount of our asserted lien."

The court's minute order of September 23, 1974, states: "In chambers, on the record, the motion of State Compensation Insurance Fund, plaintiff in intervention, for dismissal without prejudice of the Complaint in Intervention, is granted. Order for Dismissal is signed and filed this date."

The trial continued and the court refused to allow third-party defendant Climatrol's proffered evidence pertaining to the concurrent negligence of employer County, indicating, as one ground, that it was not admissible as to employer County "because Witt v. Jackson is out and the County is not a party." The jury was instructed only on BAJI No. 15.10.[2]

---

[2]BAJI 15.10

"It appears from the evidence that plaintiff has received certain workmen's compensation benefits by way of medical care and compensation for the [same injury] [injury connected with that] for which he seeks damages from the defendant in this action, and that these sums were paid by State Compensation Insurance Company which was the workmen's compensation insurer for plaintiff's employer.

"Payment of workmen's compensation benefits is based upon the mere fact that a compensable industrial accident occurred, and does not depend upon blame or fault. In the event plaintiff does not obtain a judgment in his favor in this case, he is not required to repay his employer nor his employer's insurer any amounts paid to him or paid on his behalf by his employer or by his employer's insurer.

"If you decide that the plaintiff is entitled to judgment against the defendant, you will find his damages in accordance with the court's instructions on damages and you will return your verdict in the plaintiff's favor in the amount so found without deducting therefrom the amount of any such compensation benefits paid to or for the plaintiff. The law provides a means by which the rights of the person paying such compensation benefits will be protected."

On October 3, 1974, the jury returned a verdict in favor of employee/plaintiff Hone and against third-party defendant Climatrol in the sum of $199,830.

Defense counsel in papers lodged with the court below at the time of the hearing on the lien again explained the nature and reason for the settlement agreement between plaintiff-in-intervention (State Fund) and defendant-in-intervention (Climatrol) as follows: "The agreement was like an insurance policy in that it would assure a setoff for the amount of the compensation lien even if defendant did not prevail on its Witt vs. Jackson defense. . . . If Witt vs. Jackson had been found by the jury, defendant Climatrol would have been entitled to a setoff of the amount of the compensation lien regardless of any agreements of the compensation carrier."

Thereafter employee/plaintiff opposed defendant's claim of lien assigned to it by carrier State Fund pursuant to their settlement agreement and, with his memorandum of points and authorities in opposition, lodged with the court a copy of the "Findings and Award (Serious & Wilful Misconduct)" of the Workers' Compensation Appeals Board (hereinafter WCAB) (case No. POM 17114) in which the referee found that plaintiff's injury was "proximately caused by the serious and wilful misconduct of the employer in that Article 33, Section 3251, Subdivision (a), of General Safety Orders was violated by employer."[3] The WCAB ruling preceded the trial of the matter in the court below.

---

[3]The "Referee's Opinion on Decision" states:

"SERIOUS AND WILLFUL

"Applicant's immediate supervisor knew of the uncovered shaft which was the proximate cause of his injury. While his actual knowledge of the contents of Article 33, Section 3251, Subdivision (a) of General Industry Safety Orders is unknown, it must be presumed that he had such knowledge, based on the testimony of his counterparts and superiors (Mr. McCarthy is deceased). This presumption is based upon the contents of 'Supervisor's Report of Injury' and that of testimony.

"It, thus, appears that defendant, County of Los Angeles, is guilty of serious and willful misconduct, which conduct was the proximate cause of applicant's disability.

"As the record reveals that applicant has been provided with total temporary disability indemnity in an amount exceeding $15,000.00, this Award is for the maximum allowable under Labor Code Section 4553, to wit—$7,500.00, together with costs in the amount of $78.10, payable to applicant's attorney.

"ATTORNEYS' FEES

"The reasonable value of the services of applicant's attorneys, Mohi, Morales, Dumas & Glassman [sic], is $1,000.00."

On October 31, 1974, the trial court granted the lien in favor of State Fund in the sum of $81,301.73 and denied plaintiff's attorney's request for fees from the lien claimant based on recovery of lien.

Plaintiff appeals from the order granting the lien and from disallowance of reasonable attorney fees.

## ISSUES

On appeal employee/plaintiff contends that the assignment by carrier State Fund of its compensation lien to third-party defendant Climatrol was improper in (1) that the settlement was "collusive" in nature and against public policy; (2) that the lien was extinguished by the dismissal of the complaint in intervention; (3) that it was personal in character; (4) that the lien was defeated by proof of concurrent liability on behalf of his employer, consisting of the WCAB finding of "serious and wilful misconduct" by employer County; and (5) that in any event plaintiff's counsel is entitled to attorney fees on the lien.

Third-party defendant Climatrol on appeal asserts that the settlement of the complaint in intervention was proper in all respects and that the court properly granted the lien.

## DISCUSSION

█ We summarily reject and do not reach the merits of plaintiff's first and second contentions on appeal (1) that the assignment was improper being collusive[4] in nature and against public policy, and (2) that the lien merged with the complaint in intervention and was extinguished by the dismissal of that complaint.

---

[4]Collusion has been variously defined as (1) "a deceitful agreement or compact between two or more persons, for the one party to bring an action against the other for some evil purpose, as to defraud a third party of his right"; (2) "a secret arrangement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person, or to obtain that which justice would not give them, by deceiving a court or its officers"; and (3) "a secret combination, conspiracy, or concert of action between two or more persons for fraudulent or deceitful purpose." (Black's Law Dict. (3d ed. 1933).) Business and Professions Code section 6128 provides that an attorney is guilty of a misdemeanor if he is "guilty of any deceit or collusion, or consent to any deceit or collusion, with intent to deceive the court or any party."

We hold plaintiff is estopped from asserting the above claims on appeal since the record reflects (1) that counsel for carrier State Fund and third-party Climatrol made a full disclosure of the nature of the settlement agreement including the assignment of the lien and the reasons therefor to the court and plaintiff's counsel; (2) that there is no evidence whatsoever indicating collusion by way of a secret compact or to support a finding of fraud or deceit on the part of either counsel for carrier State Fund or third-party defendant Climatrol; (3) that at no time did plaintiff's counsel object to the agreement and assignment or to the dismissal of the complaint in intervention by the trial court and knew the lien was still on file and its intended use; (4) that apparently plaintiff's counsel derived some benefit from the arrangement since he entered into a stipulation with defense counsel as to the amount of the compensation benefit payments in the sum of $81,307.73 which eased his burden of proof on the element of damages; and (5) plaintiff's counsel registered no objection to the court's instructing the jury on BAJI No. 15.10 that it should determine plaintiff's total damage irrespective of worker's compensation and that the law provides a means by which the rights of the person paying compensation benefits will be protected.

We also conclude that plaintiff's third contention that the lien was intrinsically unassignable by reason of its personal character or against public policy is not supported by the law. Judicial decisions, early and recent, are to the contrary.

The lien (or, more generally, the right to reimbursement) may be assigned to another party in "the *Witt* v. *Jackson* indemnification cycle", the effect of the assignment, however, not being such as to deprive any other party of rights independently held by that other party. (See, *Morris* v. *Standard Oil Co.* (1926) 200 Cal. 210 [252 P. 605] (assignment of lien to employee); *De Cruz* v. *Reid* (1968) 69 Cal.2d 217 [70 Cal.Rptr. 550, 444 P.2d 342] (waiver of subrogation rights in favor of employee); *Roski* v. *Superior Court* (1971) 17 Cal.App.3d 841 [95 Cal.Rptr. 312] (dismissal of action against third party).) See also *State Comp. Ins. Fund* v. *Williams* (1974) 38 Cal.App.3d 218, 222 [112 Cal.Rptr. 226] (employer's lien or reimbursement rights are more nearly an independent right to *indemnity* from the third party than a *subrogation* right entwined with the rights and interests of the employee).

Therefore, we conclude that upon the dismissal of the complaint in intervention the entire posture of the case reverted to that prior to filing

of the complaint in intervention with carrier State Fund's lien on file pursuant to Labor Code section 3856, subdivision (b). Clearly, the filing of the lien constituted one of the three statutorily authorized methods whereby State Fund could recover its workers' compensation payments to plaintiff. (See *infra.*)

■ Accordingly, it appears that plaintiff's fourth contention is the key issue, i.e., whether or not the court below erred in granting the lien and in not applying the doctrine of res judicata to the WCAB finding that employer County was guilty of ·"serious and wilful misconduct" to defeat the lien. We address that issue.

■ "There are three [statutory] ways in which an employer who becomes obligated to pay compensation to an employee may recover the amount so expended against a negligent third party. [1] He may bring an action directly against the third party (Lab. Code, § 3852, [2] join as a party plaintiff or intervene in an action brought by the employee (Lab. Code, § 3853), or [3] allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees (Lab. Code, § 3856, subd. (b))." (*Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641].)

The California Supreme Court in *Witt* v. *Jackson,* noting that none of the above "provisions gives any indication as to whether or not the employer's right to reimbursement is defeated when the employee's injuries are caused by the concurring negligence of the employer or another of his agents and a third party" (p. 69), held that "when a person is entitled to indemnity against a negligent employer, the employer cannot recover reimbursement for compensation payments made to an injured employee either by asserting a lien against a judgment recovered by the employee or by bringing an action directly against the third party. [Citations.] A negligent employer should be in no better position when, as here, the third party tortfeasor does not seek indemnity; to allow the employer reimbursement in either case would allow him to profit from his own wrong. Since, however, the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received." (*Id.,* at p. 73.)

■■ Thus, *Witt* v. *Jackson, supra,* affected the ultimate disposition of compensation benefits in third-party suits in two ways; namely, (1) the employer cannot recover from a negligent third-party for compensation

benefits paid to his employee (plaintiff) if his (employer's) own negligence contributed to the accident, and (2) the employee's recovery from the third-party is reduced by giving the third-party defendant a credit for the amount of compensation benefits received by the employee. The second way was based on the public policy against "double recovery" by employee/plaintiff as to the third party.

Plaintiff/employee relies on the recent California Supreme Court case of *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884 [117 Cal.Rptr. 683, 528 P.2d 771], and the Court of Appeal decision of *Levels* v. *Growers Ammonia Supply Co.* (1975) 48 Cal.App.3d 442 [121 Cal.Rptr. 779] (both cases were handed down in November 1974, subsequent to the trial and granting of the lien in the instant case).

He also primarily relies on *French* v. *Rishell* (1953) 40 Cal.2d 477 [254 P.2d 26] and *Topanga Corp.* v. *Gentile* (1963) 219 Cal.App.2d 274 [33 Cal.Rptr. 56], to support his assertion that the finding of the WCAB of "serious and wilful misconduct" on the part of employer County defeated the lien of carrier State Fund by the application of the doctrine of res judicata or collateral estoppel.

We conclude the plaintiff's reliance on the above authorities is misplaced. Cutting through the mirage of legalistics urged by appellant/employee we further conclude that by reason of the unique posture of the case and the manner in which it was tried, with the apparent acquiescence of all, including employee/plaintiff, that the court below did not err in granting the lien for the following reasons:

FIRST: In *Roe*, relied on by plaintiff, the court annulled the WCAB award allowing credit to the compensation carrier for the amount of the net settlement received by the employee from a third-party tortfeasor having rejected the employee's attempt to raise the employer's concurrent negligence as a bar to the credit. The court held (1) that the concurrent negligence of the employer bars his right to a credit against his liability for compensation for the amount of any recovery for his injury obtained by the employee by settlement of his cause of action against third parties; and (2) that where the employer's negligence has not been adjudicated in such third party action, the applicant is entitled to have it adjudicated before the Board. (See also *Gregory* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 899 [117 Cal.Rptr. 694, 528 P.2d 782] [citing *Roe*]; *Nelsen* v. *Workmen's Comp. App. Bd.* (1970) 11 Cal.App.3d 472 [89 Cal.Rptr. 638] [referred to in *Roe*].)

Thus, *Roe* has marked situational differences and is distinguishable from the case at bench. We construe *Roe*'s effect, in the employee-employer (carrier) third-party cycle, to be limited to the situation where, in the WCAB forum, the employee can defeat a "credit" claimed by an employer for *future* compensation benefits by proving employer's negligence before that forum (WCAB).

Here, unlike *Roe,* the trial court is the forum and there are no claims for a "credit" as to *future* compensation benefits since *prior* to the trial and the granting of the lien in the third-party action the employee and employer (carrier) had settled their differences by way of a compromise and release and the "serious and wilful misconduct" finding had been made. Here, all compensation benefits had been fixed prior to the third-party action.

SECOND: *Levels, supra,* relied on by employee plaintiff herein, is both distinguishable from the instant case and supportive of validation of the lien herein involved.

In *Levels,* employee-plaintiff Levels entered into a stipulated judgment with third-party defendant for injuries he received while performing duties for his employer. The stipulated findings, conclusions and judgment, signed by employee Levels and third-party Growers, included an agreement that the compensation lien portion of the award would be held in trust; that in the event employer's compensation carrier prevailed in asserting its lien, it would receive the amount in trust; however, in the event that the carrier was found to be barred from recovering its lien for compensation benefits, it would be paid to employee Levels. Thereafter, the intervention action proceeded to trial between employee Levels and employer's carrier, resulting in a finding that the employer was concurrently negligent and employee Levels was to receive the monies held in trust.

· The appellate court affirmed holding the trial court was correct in allowing Levels to raise the *Witt* v. *Jackson* issue (citing *Roe* and *Gregory, supra*) and pointing out that when the carrier intervened in Levels' suit against the third-party defendant it subjected itself to the jurisdiction of the superior court to determine its insured's relative fault in connection with Levels' injury, so as to determine its rights to reimbursement of benefits (citing Lab. Code, § 3853; and *Witt* v. *Jackson, supra*).

Thus, in *Levels* there was an active complaint-in-intervention subjecting carrier to the jurisdiction of the court. In the instant case the complaint-in-intervention had been dismissed without prejudice and the case had reverted to the original posture with a lien on file. Thus, in the instant case if employee/plaintiff had the right to raise the issue of an employer's negligence merely to defeat the lien in his suit against a third-party tortfeasor it would effectively destroy the employer's choice of means of effecting subrogation against a third party explicitly provided for by statute, one of which is to allow the employee to prosecute the action against the third party himself and for the employer to subsequently apply for a first lien against the amount of the employee's judgment. ■ The jurisdiction of the WCAB to determine the validity of the employer's lien, where it is not the third party tortfeasor but the injured employee who seeks to prove employer negligence is exclusive. (*Gilford* v. *State Compensation Ins. Fund* (1974) 41 Cal.App.3d 828 [116 Cal.Rptr. 615] [petition for a hearing by the Supreme Court denied Nov. 13, 1974—the Supreme Court handed down *Roe* on Nov. 27, 1974].)

■ Moreover, in *Levels* as part of the stipulation the third-party defendant, in effect, assigned its *Witt* v. *Jackson* defense to plaintiff/employee to defeat the carrier's complaint-in-intervention. Under that rationale we see no compelling reason why the carrier (State Fund) in the instant case cannot settle with the third-party (public policy favors settlement of suits and the narrowing of issues) and assign its lien to the third party.

Furthermore, in this latter respect, although there are apparently no decisions dealing with the permissibility or effect of an agreement or settlement between the employer and the third party, there have been cases in which those two separate defensive interests coalesced because of an identity of persons. In other words, the same individual had been required to make compensation payments and was also liable to the employee for third-party damages. In decisions both *before* and *after Witt* v. *Jackson,* where the employee recovered an aggregate judgment in the civil action, the defendant was allowed an offset in the amount of the compensation payments or a lien claim for the same. Whether an offset or a lien was allowed was treated as a matter of indifference and no inquiry was made as to whether the employee's injuries that entitled him to the compensation benefits might not have arisen out of negligence on the part of the defendant in the defendant's capacity as employer. (*Heaton* v. *Kerlan* (1946) 27 Cal.2d 716, 719-720, 723 [166 P.2d 857];

*Duprey* v. *Shane* (1952) 39 Cal.2d 781, 795-796 [249 P.2d 8]; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 636 [102 Cal.Rptr. 815, 498 P.2d 1063] ([¶] "Nothing that we have said should be construed to be an approval of a double recovery. In the event that plaintiff obtains a judgment, defendant shall be entitled to a set-off, to the extent that it has already paid compensation to plaintiff in proceedings before the Board for the subsequent injuries which are the subject of the instant action, together with medical and other benefits relating only to such injuries. ...").)

Thus, in the case at bench with the removal of *Witt* v. *Jackson* issues from the case as was apparently the understanding of the trial judge and acquiesced in by all parties, including employee/plaintiff's attorney,[5] the lien became absolute in the sense that the lien was converted into a partial assignment of judgment and therefore not subject to defeat.

Although employee/plaintiff in the case at bench does not complain of the amount of the jury's overall verdict ($199,830.73), and specifically does not suggest that his net recovery ($118,529.73) would have been higher had his recovery been determined in some manner other than by an aggregate verdict with deduction by the court of the amount of the compensation benefits ($81,301), we note that the method used by the trial court in this case has been consistently followed and approved in the third-party cases. (*Kuhlmann* v. *Pascal & Ludwig* (1970) 5 Cal.App.3d 144, 150-151 [85 Cal.Rptr. 199] [BAJI No. 15.10 given and segregation by the court under Lab. Code, § 3856, subd. (b)]; see also *Slayton* v. *Wright*

---

[5] "THE COURT: I think you would be estopped to deny it [the compensation lien and its amount], so if you will consent on the record that will simplify matters.

"[PLAINTIFF'S COUNSEL]: Okay.

"Are you still going to raise *Witt versus Jackson* or something similar?

"[THIRD PARTY'S COUNSEL]: Is there any point in my raising it at this point?

"THE COURT: I don't see any.

"[PLAINTIFF'S COUNSEL]: They are buying the State Compensation Insurance Fund lien rights for whatever figure it may be.

"THE COURT: If he is going to go ahead with *Witt versus Jackson,* then [EMPLOYER'S COUNSEL] would have to stay in here, I presume.

"[PLAINTIFF'S COUNSEL]: Not necessarily if he is buying his lien.

"You follow me?

"THE COURT: Have you bought his lien, or have you made a deal with him to compromise him out of the case?

"[THIRD PARTY'S COUNSEL]: Yes. We have made arrangement to—

"THE COURT: You are going to take an assignment from him?

"[THIRD PARTY'S COUNSEL]: Eventually.

"THE COURT: You are pretty well satisfied then there is no point in a *Witt versus Jackson* as far as you are concerned, having settled with the other party, is there?

"[THIRD PARTY'S COUNSEL]: I don't think so, your Honor."

(1969) 271 Cal.App.2d 219, 225 [76 Cal.Rptr. 494]; *Castro v. Fowler Equipment Co.* (1965) 233 Cal.App.2d 416, 423 [43 Cal.Rptr. 589] [offset may be determined "in any feasible way"].)

 ██ THIRD: Assuming arguendo that it would be permissible for employee/plaintiff to attempt to defeat the lien in the case at bench (which it is not for the reasons hereinbefore discussed), it could not be accomplished, under the facts of this case, by application of the doctrine of res judicata.[6]

In *Addington v. Industrial Indem. Co.* (1972) 24 Cal.App.3d 802 [101 Cal.Rptr. 277], the court said at page 809: "There can be no question that in a proper case a final decision by the board must be given res judicata effect in the superior court. (*French v. Rishell,* 40 Cal.2d 477, 480 [254 P.2d 26]; cf. *Scott v. Industrial Acc. Com.,* 46 Cal.2d 76, 83 [293 P.2d 18].) Nor can it be doubted that the doctrine of res judicata applies, again in a proper case, to final rulings on points of law and not just to determinations of fact. (*Olwell v. Hopkins,* 28 Cal.2d 147, 150-153 [168 P.2d 972] ['A decision on the merits, however, is not necessarily a decision upon the facts.']; *Goddard v. Security Title Ins. & Guar. Co.,* 14 Cal.2d 47, 51-55 [92 P.2d 804]; *Sterling v. Galen,* 242 Cal.App.2d 178, 182-185 [51 Cal.Rptr. 312]; Rest. Judgments, §§ 50, 70.)"

 The validity of a plea of res judicata or collateral estoppel depends on the affirmative answer to three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? and (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].)

 Here, we cannot say that the issue decided in the prior WCAB finding of "serious and wilful misconduct" on the part of employer

---

[6]In one aspect, the doctrine of res judicata precludes parties or their privies from relitigating a cause that has been finally determined by a court of competent jurisdiction; in a second aspect, known as *collateral estoppel,* any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if the issue is involved in a subsequent lawsuit on a different cause of action. The defense of res judicata is a complete bar to an action, whereas the claim of *collateral estoppel* is concerned with the conclusiveness of a prior determination of a particular issue. (*Topanga Corp. v. Gentile, supra,* 219 Cal.App.2d at p. 278; see also *Rynsburger v. Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269 [72 Cal.Rptr. 102].)

County, based on the violation of a safety order, was *identical* to the issue attendant upon a finding of concurrent negligence in the superior court action. (See *State Comp. Ins. Fund* v. *Operated Equipment Co.* (1968) 265 Cal.App.2d 759 [71 Cal.Rptr. 531] [employer's violation of safety order not negligence for purposes of *Witt* v. *Jackson* defense] and *Lewis* v. *American Hoist & Derrick Co.* (1971) 20 Cal.App.3d 570 [97 Cal.Rptr. 798] [employer's negligence not sufficient as against third party's strict liability].)

Nor is this a "proper" case for employment of the doctrine of res judicata since the doctrine should not be used to work an injustice or to take unfair advantage. Here, employee/plaintiff seeking a double recovery in the approximate sum of $81,000 urges that the WCAB'S determination of "serious and wilful misconduct" was conclusive of employer County's negligence to defeat the lien. However, if the action was tried in the court below with third-party defendant's *Witt* v. *Jackson* affirmative defense, the same facts upon which the WCAB'S findings were based could be proved to establish employer County's concurrent negligence, and third-party defendant Climatrol would be entitled to a reduction of the judgment by way of set-off in the sum of $81,000.

It would therefore be unconscionable to now utilize the doctrine to permit a "windfall" to employee/plaintiff when third-party defendant was denied the *Witt* v. *Jackson* defense in the trial either by mutual understanding or misunderstanding by the court and all parties concerned.

Having concluded that the assignment of carrier State Fund's rights to its lien to third-party Climatrol and the granting of the lien was proper, Climatrol "steps into the shoes" of State Fund and accepts not only the rights but obligations attendant to said lien. Here, counsel for employee/plaintiff prosecuted his claim against third-party Climatrol to jury verdict in the sum of $199,830 which included State Fund's lien in the sum of $81,301.73.

We are bound by *Quinn* v. *State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761]. There, the California Supreme Court, faced with the question whether or not an active litigant (employee) may require the passive beneficiary of his efforts (there, the employer; here, State Fund) to contribute toward the payment for services of litigant's attorney which produced the recovery, resolved the issue in favor of the injured employee's attorneys and remanded the matter to the trial court

for a hearing on the settling of attorney fees in a manner consistent with the factors and equitable principles therein discussed.

We therefore conclude that the court below erred in denying counsel for employee/plaintiff attorney's fees on the amount of the lien recovered against third-party Climatrol.

## DISPOSITION

The judgment (order) granting the lien in the sum of $81,301.73 is affirmed; the order denying plaintiff's attorney fees on the amount of the lien is reversed and the matter remanded to the trial court for a hearing on settling of attorney fees consistent with the views expressed in *Quinn* v. *State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761].

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1976.