Filed 3/8/24  NorGUARD Insurance Company v. Chavero Velazquez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NORGUARD INSURANCE COMPANY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO CHAVERO VELAZQUEZ,<br><br>Defendant and Appellant. | H050725<br>(Monterey County<br>Super. Ct. No. 22CV002277) |

## I.  INTRODUCTION

Appellant Alejandro Chavero Velazquez reportedly suffered a dog bite injury while working for his employer.  A workers' compensation case is apparently still pending against his employer and the workers' compensation carrier, respondent NorGUARD Insurance Company.

Appellant also filed a personal injury action against the homeowners who allegedly owned the dog.  In the personal injury action, respondent filed a notice of lien in the amount of $89,176.27, relating to workers' compensation benefits that respondent had allegedly paid to appellant.  Eventually, the personal injury action between appellant and the homeowners settled, with the settlement agreement providing, among other things, that the homeowners' insurer would pay $109,587.11 to appellant's attorney "to be held in trust and

not disbursed at all until the [workers' compensation] lien is fully resolved by settlement or judicial order."

Appellant and respondent were unable to settle the workers' compensation lien. As a result, respondent filed the instant civil action against appellant for breach of contract, alleging that appellant's "failure to perform under the [settlement agreement] by payment to [respondent] of its workers' compensation benefits constitutes a material breach of the [settlement agreement] . . . ." (Some capitalization omitted.) In the prayer for relief, respondent seeks "payment of its [w]orkers' [c]ompensation lien."

Relevant to this appeal, appellant filed a special motion to strike the breach of contract cause of action under Code of Civil Procedure section 425.16,[1] commonly known as the anti-SLAPP[2] statute, which provides that a cause of action arising from constitutionally protected speech or petitioning activity is subject to a special motion to strike unless the plaintiff establishes a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) The trial court denied appellant's anti-SLAPP motion.

On appeal, appellant contends that the trial court erred in denying his anti-SLAPP motion and that in any event, the Workers' Compensation Appeals Board (WCAB) has exclusive jurisdiction over this case because it involves an issue of whether the employer was at fault for appellant's injury. As we will explain, appellant fails to persuasively demonstrate that the WCAB has exclusive jurisdiction over this case or that the trial court erred in denying the anti-SLAPP motion. Accordingly, we will affirm the trial court's order.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Appellant's Workers' Compensation Proceeding*

Appellant was employed as a tile setter.  In 2018, he was working for his employer on a tile project at the residence of a customer.  While working at the residence, appellant reportedly suffered a dog bite injury by the homeowner's dog.  Appellant was apparently diagnosed with nerve damage and "complex regional pain syndrome" and underwent several surgeries.  (Capitalization omitted.)

Appellant sought workers' compensation benefits for the injury.  An amended application regarding the extent of the injury was filed in the workers' compensation proceeding in July 2022.  The workers' compensation case against the employer and respondent is apparently still pending.

### B. *Appellant's Personal Injury Action Against the Homeowners*

In the meantime, appellant filed a personal injury action against the homeowners.  One of the disputed issues in the personal injury action was appellant's claim of complex regional pain syndrome.  Employer fault was not raised or litigated in the personal injury action.  In May 2020, in the personal injury action, respondent filed a notice of lien in the amount of $89,176.27 relating to workers' compensation benefits that had been paid to appellant.

### C. *The Settlement Agreement Regarding the Personal Injury Action*

The homeowners had an insurance policy with a $1 million limit.  They settled appellant's personal injury action for the policy limit.  The settlement agreement provided that the homeowners' insurer would pay a portion of the settlement to appellant's personal injury attorneys and that the amount would not be disbursed by the attorneys until the workers' compensation lien was resolved.  Specifically, the settlement agreement stated that the homeowners' insurer would pay "$109,587.11 to be held in trust and not disbursed at all until the WC lien is fully resolved by settlement or judicial order payable to the LAMB and FRISCHER Law Firm IOLTA client trust account."  Appellant's attorney and respondent's

3

attorney signed the settlement agreement, approving it "as to form and content," in January 2022.

### D. *The Post-Settlement Communications*

In February 2022, appellant and respondent engaged in settlement discussions regarding respondent's lien. The parties disagreed regarding the amount by which the lien should be reduced for attorney's fees and the extent, if any, of employer fault.

In June 2022, appellant indicated that he would proceed with workers' compensation proceedings regarding employer fault. Respondent stated that it was not seeking a credit in the workers' compensation forum, that it was instead seeking resolution of the lien pursuant to the settlement agreement, and that if appellant did not want to negotiate the lien, respondent would file a civil action.

In July 2022, respondent apparently provided appellant with its proposed breach of contract complaint and indicated its intent to file the complaint if the lien was not resolved that month. Appellant responded that the funds were being held in his attorney's trust account, that appellant would pay the amount owed, and that the proper forum for determining the amount owed was a WCAB "credit/lien hearing regarding employer fault." Appellant observed that the employer's deposition was scheduled for September, that the parties could resume negotiations afterward, and that if the parties could not resolve the matter it would go to the WCAB. Appellant contended that the WCAB had exclusive jurisdiction over the workers' compensation case and the lien and credit issues, and he reiterated that he would pay respondent upon a finding regarding employer fault.

### E. *Respondent's Present Civil Action Against Appellant*

On August 3, 2022, respondent filed the instant breach of contract action against appellant. Respondent claimed that it was a third party beneficiary of the settlement agreement. Relevant here, respondent alleged that appellant's "failure to perform under the [settlement agreement] by payment to [respondent] of its workers' compensation benefits constitutes a material breach of the [settlement agreement] and the obligations owed to

4

[respondent] as a third-party beneficiary." (Some capitalization omitted.) In the prayer for relief, respondent seeks "payment of its [w]orkers' [c]ompensation lien."

## F. *Appellant's Anti-SLAPP Motion*

Appellant filed an anti-SLAPP motion to strike the complaint under section 425.16. He contended that the lawsuit was a SLAPP because respondent's breach of contract claim "interfere[d] with [his] efforts in petitioning" the WCAB. Specifically, appellant argued that respondent's breach of contract claim was based on his failure to reimburse respondent for workers' compensation benefits. However, a determination of the amount of respondent's workers' compensation lien required a determination of employer fault that may have contributed to appellant's injury. Appellant contended that the WCAB had exclusive jurisdiction to resolve the issue of employer fault, the issue was currently being litigated before the WCAB, and petitioning the WCAB to resolve an issue within its exclusive jurisdiction is protected activity. Appellant also argued that there was no probability that respondent would prevail on the merits of the breach of contract claim.

In support of the special motion to strike, appellant provided a declaration from his workers' compensation attorney. The workers' compensation attorney stated that the "issue of employer fault and how it will affect the lien and credit rights of [respondent]" are "currently being litigated" in the workers' compensation case. The attorney stated that on September 8, 2022, he took the deposition of appellant's employer to investigate whether any acts or omissions by the employer would establish comparative fault by the employer for appellant's workplace injury. The attorney anticipated that one or two more depositions were needed before the issue of employer fault would be ready to be adjudicated in the workers' compensation proceeding.

Appellant also provided a declaration from his personal injury attorney who was also defending him against respondent's breach of contract action. The attorney stated that settlement negotiations with respondent regarding the workers' compensation lien between January and July 2022 were unsuccessful. The parties disputed "the amount of employer

5

fault" which affected the potential amount that appellant owed respondent. Appellant's attorney indicated that the settlement money was still being held by his law firm, that the law firm would hold the funds until the lien issue was resolved, and that appellant intended to abide by his obligations under the settlement agreement. Attached to the attorney's declaration were copies of emails he exchanged with respondent's attorney.

In opposition to the anti-SLAPP motion, respondent contended that it sought to enforce its subrogation rights under the Labor Code through its breach of contract action and that the action did not infringe upon appellant's right to free speech or to petition the government. Respondent argued that its breach of contract action was "distinct" from the pending WCAB proceeding where "a credit dispute still remains . . . as to how much of [appellant's settlement] will reduce [respondent's] payment of future workers' compensation benefits." Respondent also argued that it had a meritorious claim for breach of contract because appellant breached the settlement agreement by refusing to disburse the settlement funds from his attorney's trust account and by refusing to negotiate the settlement of the workers' compensation lien. Respondent requested leave to amend to the extent the trial court determined that respondent had not shown a probability of prevailing.

Respondent provided a declaration from counsel in opposition to the anti-SLAPP motion. According to the declaration, respondent and appellant communicated in February 2022, regarding a reduction in respondent's lien for appellant's attorney's fees and costs. Appellant sought a greater percentage for attorney's fees and raised the issue of employer fault. Respondent sought "confirmation" of appellant's claimed attorney's fees and proof of employer fault but did not receive a response.

G. *The Trial Court's Order*

At the conclusion of an unreported hearing on December 2, 2022, the trial court denied appellant's anti-SLAPP motion and denied an award of attorney's fees to either

6

party.[3]  Appellant filed a notice appeal on December 27, 2022.  On January 3, 2023, the court filed its written order denying the motion and denying an award of fees and costs.[4]

## III.  DISCUSSION

### A.  *Respondent's Request for Judicial Notice*

Respondent requests that we take judicial notice of a "case events document" which shows certain events in appellant's pending workers' compensation case as reflected in the WCAB's Electronic Adjudication Management System.  By this document, respondent seeks to establish, among other things, that it has not filed in the workers' compensation proceeding a petition for credit from the settlement of appellant's third-party action, and therefore the issue of employer fault is not currently being litigated in the workers' compensation proceeding.

Appellant contends that the proffered document "is not a complete docket," and therefore it does establish what filings were made in the workers' compensation case or what issues are being litigated in that case.

Appellant's point is well taken.  More fundamentally, however, it does not appear that respondent requested judicial notice of this document in the trial court.  " 'Reviewing

---

[3] A moving defendant who prevails on an anti-SLAPP motion is generally entitled to recover attorney's fees and costs.  (§ 425.16, subd. (c)(1).)  A plaintiff who prevails against such a motion is entitled to recover reasonable attorney's fees and costs pursuant to section 128.5 if the trial court finds that the anti-SLAPP motion is frivolous or solely intended to cause unnecessary delay.  (§ 425.16, subd. (c)(1).)

[4] According to the minute order of the hearing in which the trial court denied the anti-SLAPP motion, respondent was directed to prepare a proposed order.  An order denying an anti-SLAPP motion is immediately appealable.  (§ 425.16, subd. (i); § 904.1, subd. (a)(13).)  However, "[w]hen a minute order expressly directs that a written order be prepared, an appeal does not lie from the minute order, but only from the later order.  [Citations.]"  (*County of Alameda v. Johnson* (1994) 28 Cal.App.4th 259, 261, fn. 1; accord, *Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 658-659; see Cal. Rules of Court, rule 8.104(c)(2).)  To the extent appellant's notice of appeal was premature, we deem it filed immediately after entry of the written order denying his anti-SLAPP motion.  (Cal. Rules of Court, rule 8.104(d), (e); see *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 59.)

courts generally do not take judicial notice of evidence not presented to the trial court'
absent exceptional circumstances.  [Citation.]  'It is an elementary rule of appellate
procedure that, when reviewing the correctness of a trial court's [order or] judgment, an
appellate court will consider only matters which were part of the record at the time the
[order or] judgment was entered.  [Citation.]  This rule preserves an orderly system of
[litigation] by preventing litigants from circumventing the normal sequence of litigation.'
[Citation.]"  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)  No exceptional
circumstances appear in this case.  Accordingly, we deny respondent's request for judicial
notice.

### B.  *Jurisdiction*

The parties disagree whether this breach of contract action involving respondent's
lien may be litigated in the trial court or must be determined in the workers' compensation
forum.  Appellant contends that respondent's lien amount cannot be determined without first
addressing the issue of employer fault, that the WCAB has exclusive jurisdiction in this case
on the issue of employer fault, and that the instant civil action must be dismissed for lack of
jurisdiction.  In analyzing this issue, we first set forth general legal principles regarding
workers' compensation exclusivity in the context of third party lawsuits, employer/insurer
lien rights, and the issue of employer negligence.

### 1.  General Legal Principles Regarding Workers' Compensation

Generally, "when a worker is entitled to workers' compensation benefits for an
injury, those benefits constitute the worker's exclusive remedy against his or her employer
for injuries sustained in the course of employment.  [Citation.]"  (*Phelps v. Stostad* (1997)
16 Cal.4th 23, 30, italics omitted.)  " '[T]he legal theory supporting such exclusive remedy
provisions is a presumed "compensation bargain," pursuant to which the employer assumes
liability for industrial personal injury or death without regard to fault in exchange for
limitations on the amount of that liability.  The employee is afforded relatively swift and
certain payment of benefits to cure or relieve the effects of industrial injury without having

8

to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Employers Mutual Liability Ins. Co. v. Tutor-Saliba Corp*. (1998) 17 Cal.4th 632, 637 (*Employers Mutual*).)

"Despite the exclusivity of the workers' compensation remedy against the employer, the worker may recover a judgment from a negligent third party. [Citations.]" (*Employers Mutual*, *supra*, 17 Cal.4th at p. 637.) The employer and/or its insurer[5] also have a claim against the third party for reimbursement of workers' compensation benefits. (*Id.* at p. 639.) Specifically, "[w]hen a third party is liable for an employee's injury, the controlling statutes grant the employer the right (1) to obtain *reimbursement* from the third party for workers' compensation benefits which the employer *already has paid* ([Lab. Code,] §§ 3852, 3853, 3856, subd. (b)), and (2) to obtain a *credit* toward its *future liability* for workers' compensation equal to the amount of the employee's recovery . . . . ([Lab. Code,] § 3861.)" (*Bonner v. Workers' Comp. Appeals Bd*. (1990) 225 Cal.App.3d 1023, 1032-1033, italics added (*Bonner*).) "This prevents an employee from retaining both the third party damages and workers' compensation benefits for the same injuries and disabilities. [Citation.]" (*Collins v. Union Pacific Railroad Co*. (2012) 207 Cal.App.4th 867, 881, italics omitted.)

An employer may pursue reimbursement for workers' compensation benefits already paid as follows: " '[(1)] the employer "may bring an action directly against the third party ([Lab. Code,] § 3852), [(2)] join as a party plaintiff or intervene in an action brought by the employee [against the third party] ([Lab. Code,] § 3853), or [(3)] allow the employee to

---

[5] Regarding the relationship between the employer and its workers' compensation insurance carrier, the California Supreme Court has explained as follows: " 'In California, every employer except the state is required to "secure the payment of compensation." [Citation.] This mandate is satisfied by either purchasing workers' compensation insurance, or self-insuring. [Citation.]' [Citation.] 'Employers who comply with the insurance requirement [citation] are relieved of liability for compensation, and the insurance carrier assumes liability.' [Citation.] The insurer is then subrogated to all of the rights and liabilities of the employer. [Citations.]" (*Employers Mutual*, *supra*, 17 Cal.4th at pp. 638-639, fn. omitted.)

prosecute the action . . . and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees ([Lab. Code,] § 3856, subd. (b))." [Citation.]' [Citation.]" (*Employers Mutual*, *supra*, 17 Cal.4th at pp. 637-638.) The third party litigation need not result in a judgment, however. If the "employee recoups damages from a third party tortfeasor by way of . . . settlement," the employer also "has a right of reimbursement for workers' compensation benefits it has paid or become obligated to pay." (*Hughes v. Argonaut Ins. Co.* (2001) 88 Cal.App.4th 517, 523; see Lab. Code, § 3860.) "When settlement is effected, . . . proceeds from the recovery are to be used first to pay costs of settlement, including reasonable attorney fees; second, to refund the employer's reimbursable compensation costs; and finally any balance to the employee. ([Lab. Code,] § 3860 . . . .)" (*Hughes*, *supra*, at p. 524.) "Where . . . settlement is prompted solely through the labors of the employee's attorney, then the settlement costs, including reasonable attorney fees, are deducted from the amount of settlement prior to reimbursing the employer. [Citation.] Because the employer is a passive beneficiary in this situation, its reimbursement rights are subject to reasonable fees and expenses for the services that created the common fund. [Citations.]" (*Ibid.*, fn. omitted.)

The employer may also seek a credit regarding *future* workers' compensation benefits. "If, as is often the case, [an employee] requires additional medical treatment or rehabilitation services, [the employee] may seek additional benefits from [the employer's workers' compensation carrier]. Because damage or settlement amounts obtained from a third party tortfeasor in a personal injury action are generally supposed to include a component for future benefits, [the employer or its workers' compensation carrier] would be entitled to a credit against future benefits based on the amount the third parties paid to [the employee]. [Citations.]" (*Bailey v. Reliance Insurance Co*. (2000) 79 Cal.App.4th 449, 455; see *id.* at p. 451.) "The employer's or carrier's settlement of its claim for reimbursement of past benefits (often called its 'lien claim') does not affects its right to obtain a credit for future benefits. [Citation.]" (*Id.* at p. 456.) "The right to a credit or

10

reimbursement are separate and distinct rights and the waiver of a right to reimbursement does not mean that a credit right has been waived. [Citations.]" (*Curtis v. State of California ex rel. Dept. of Transportation* (1982) 128 Cal.App.3d 668, 683 (*Curtis*).)

"In *Witt v. Jackson* (1961) 57 Cal.2d 57, the California Supreme Court held that an employer could not recover workers' compensation benefits paid if the employer's negligence contributed to the employee's injury. The Supreme Court reconciled this rule with comparative negligence in *Associated Construction & Engineering Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829." (*Aetna Casualty & Surety Co. v. Superior Court* (1993) 20 Cal.App.4th 1502, 1508, fn. 4 (*Aetna*).) As a result, "[a]n employer is accountable for its own negligence in causing the employee's injury, and therefore is only reimbursed for the amount by which its compensation liability exceeds its proportional share of the injured employee's recovery. [Citation.]" (*Employers Mutual*, *supra*, 17 Cal.4th at p. 638.) Likewise, "a concurrently negligent employer" is "not . . . barred totally from obtaining credit, but instead should receive . . . credit only for the amount by which its compensation liability exceeds its proportional share of the injured employee's tort damages. [Citation.]" (*Bonner*, *supra*, 225 Cal.App.3d at p. 1033; accord, *Southern Cal. Edison Co. v. Workers' Comp. Appeals Bd*. (1997) 58 Cal.App.4th 766, 769-770.) In other words, "[i]f an employer is adjudicated concurrently negligent," then "comparative negligence principles" will apply to its "credit or reimbursement claims." (*Curtis*, *supra*, 128 Cal.App.3d at p. 683, italics omitted; accord, *DaFonte v. Up-Right, Inc*. (1992) 2 Cal.4th 593, 599 ["If the employer's share of fault exceeded the benefits paid or owed, its claim for reimbursement, lien, or credit should be denied. If the benefits paid or owed exceeded the employer's share of fault, the employer should recoup the excess only"].)

Depending on the circumstances, the issue of employer negligence may be adjudicated in court or in the workers' compensation arena. (See, e.g., *Short v. State Compensation Ins. Fund* (1975) 52 Cal.App.3d 104, 107.) For example, in an employee's personal injury action against a third party, the third party may raise as a defense "the

11

employer's concurrent negligence in causing the employee's injury." (*Employers Mutual*, *supra*, 17 Cal.4th at p. 639.)  However, an employer is "entitled to notice where a third party tortfeasor raises the issue of the employer's concurrent negligence.  Because the successful assertion of that defense [may] defeat[] the employer's right of reimbursement (*Witt v. Jackson*, *supra*, 57 Cal.2d at p. 72), due process requires timely notice to the employer to enable it to defend the charge and thereby protect its right to recoup benefits paid [citation].  In such a case, the employer must file a complaint in intervention in order to protect its rights."  (*O'Dell v. Freightliner Corp.* (1992) 10 Cal.App.4th 645, 654 (*O'Dell*).)  When the issue of employer negligence is raised in a third party action, "the mere filing of a lien is insufficient to protect an employer's claim of reimbursement.  When that occurs the employer must file a complaint in intervention." (*Aetna*, *supra*, 20 Cal.App.4th at p. 1507.) "On the other hand, if the employer's negligence has not been raised as an issue in the third party action, the employer may rely on its lien rights.  [Citation.]" (*O'Dell*, *supra*, at p. 654.)

Employer negligence may alternatively be adjudicated in the workers' compensation arena when the employer seeks a credit against future workers' compensation benefits.  As we have indicated above, "reimbursement applies to benefits paid prior to a third party judgment or settlement.  With respect to future workers' compensation benefits due the injured party, a different mechanism applies—credit.  An employer is entitled to a credit against its obligation to pay further compensation benefits in the amount of the worker's net recovery against the third party tortfeasor. (Lab. Code, § . . . 3861.)"**[6]** (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 579, 583, italics omitted;

---

**[6]** Labor Code section 3861 states, "The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to the payment of expenses or attorneys' fees, pursuant to the provisions of Sections 3856, 3858, and 3860 of this code, or has not been applied to reimburse the employer."

accord, *Bonner*, *supra*, 225 Cal.App.3d at pp. 1032-1033.) "Labor Code section 3861 generally permits a credit against workers' compensation benefits of the portion of an employee's third party award which has not been applied to reimburse the employer. [Citation.]" (*Anderson-Cottonwood Disposal Service v. Workers' Comp. Appeals Bd.* (1982) 135 Cal.App.3d 326, 330.) Labor Code "section 3861 is a delegation of procedural authority for [a Worker's Compensation] [A]ppeals [B]oard inquiry into the employee's defense of employer negligence. [Citation.]" (*Roe v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 891 (*Roe*).) Thus, " ' "where the employer's negligence has not been adjudicated in [the] third party action, the applicant [employee] is entitled to have it adjudicated before the Board" ' " (*Anderson-Cottonwood Disposal Service*, *supra*, at p. 331), and "the Board, depending on its determination of such issue, will thereafter allow or decline to allow, as the case may be, the credit provided for" in Labor Code section 3861. (*Gregory v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 899, 902.)

## 2. *Analysis*

In this case, appellant fails to persuasively demonstrate that the WCAB has exclusive jurisdiction over the issue of employer negligence in the context of respondent's breach of contract action. On this point, we find *Marrujo v. Hunt* (1977) 71 Cal.App.3d 972 (*Marrujo*) instructive. In *Marrujo*, the employee died and his family filed a wrongful death action against several third parties. (*Id.* at p. 975.) The employer's workers' compensation carrier filed in the wrongful death action a notice of lien for death benefits that it had paid to the widow. (*Ibid.*) The workers' compensation carrier "elected not to file a complaint in intervention, instead relying on its notice of lien claim." (*Ibid.*) During trial, all but one of the third party defendants settled with the decedent's family, who agreed to indemnify the settling defendants against any liability on the workers' compensation carrier's lien claim in return for the settling defendants paying the family $245,000. (*Ibid.*) " 'In other words, the settlement of $245,000 include[d] any claim made by the [workers'] compensation carrier.' " (*Id.* at p. 978, fn. 4.) The trial resulted in a verdict in favor of the remaining

13

defendant. (*Id.* at p. 975.) The workers' compensation carrier then "moved for allowance of the lien, from the proceeds of the settlement," in the amount that the workers' compensation carrier had paid as death benefits. (*Ibid.*) Over the opposition of the decedent's family, the trial court granted the motion and ordered payment of that amount to the workers' compensation carrier, subject to the carrier paying costs and attorney's fees to the decedent's family's attorney. (*Id.* at pp. 975-976.)

On appeal, the decedent's family challenged the order allowing the lien claim of the workers' compensation carrier against the settlement proceeds. (*Marrujo, supra*, 71 Cal.App.3d at p. 974.) The appellate court affirmed the order. (*Id.* at p. 979.) The court determined that "the settlement agreement made by [the decedent's family] included [the workers' compensation carrier's] claim for reimbursement for its payments of death benefits. It follows that the proceeds of the settlement were subject to [the carrier's] lien in the amount of the benefits paid by it." (*Id.* at p. 978, fn. omitted.) The appellate court also distinguished a case relied on by the decedent's family, *Van Nuis v. Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, on the grounds that, among other reasons, the injured employee in *Van Nuis* sued a third party who "alleged a defense based on *Witt v. Jackson* (1961) 57 Cal.2d 57" regarding employer negligence. (*Marrujo, supra*, at p. 979; see *id.* at p. 979, fn. 5.) The *Marrujo* court explained, "In the instant case, no *Witt v. Jackson* defense was pleaded; thus there was no issue of concurrent negligence on the part of [the workers' compensation carrier] which would bar its right to recover the amount of death benefits paid by it. Since the settlement here included the amount of [the workers' compensation carrier's] claim for reimbursement, refusal to allow satisfaction of such claim from the proceeds of the settlement would result in double recovery by [the decedent's family]." (*Id.* at p. 979.)

Similarly, in the present case, employer fault was not raised in appellant's personal injury action against the homeowners. If the issue had been raised, the employer or respondent could have filed a complaint in intervention to protect a claim for

14

reimbursement. (*O'Dell*, *supra*, 10 Cal.App.4th at p. 654; *Aetna*, *supra*, 20 Cal.App.4th at p. 1507.) "[I[f the employer's negligence has not been raised as an issue in the third party action, the employer may rely on its lien rights. [Citation.]" (*O'Dell*, *supra*, at p. 654.) Further, "the settlement agreement made by [appellant] included [respondent workers' compensation carrier's] claim for reimbursement for its payments of . . . benefits. (*Marrujo*, *supra*, 71 Cal.App.3d at p. 978, fn. omitted.) As "no *Witt v. Jackson* defense [regarding employer negligence] was pleaded," "there was no issue of concurrent negligence on the part of [the workers' compensation carrier] which would bar its right to recover the amount of . . . benefits paid by it." (*Id.* at p. 979.) It thus appears that "the proceeds of the settlement were subject to [respondent workers' compensation carrier's] lien in the amount of the benefits paid by it." (*Id.* at p. 978.)

Appellant contends that three cases—(1) *Gilford v. State Compensation Ins. Fund* (1974) 41 Cal.App.3d 828 (*Gilford*), (2) *Hone v. Climatrol Industries, Inc*. (1976) 59 Cal.App.3d 513 (*Hone*), and (3) *Carrabello v. RGW Constr., et al.* (Sept. 12, 2013, ADJ4118969 (SJO 0267767)) 2013 Cal.Wrk.Comp. P.D. Lexis 413 (*Carrabello*)— "unambiguously hold that the WCAB has exclusive jurisdiction in a lien dispute when employer fault is raised by the employee and not by a third-party tort defendant." We are not persuaded by appellant's reliance on these cases.

In *Gilford*, the employee sued his employer and the third party tortfeasor. (*Gilford*, *supra*, 41 Cal.App.3d at p. 831.) The employee's "evident purpose" in alleging the employer's concurrent negligence "was to defeat the employer's lien." (*Id.* at p. 832.) The employer demurred to the complaint, the trial court sustained the demurrer, and the appellate court affirmed. (*Id.* at pp. 830, 834.) As observed by appellant in the instant case, the appellate court in *Gilford* explained that "the jurisdiction of the WCAB to determine the validity of the employer's lien, where it is not the third-party tortfeasor but the injured employee who asserts the *Witt v. Jackson* rationale [regarding employer negligence], is exclusive [citation]." (*Id.* at p. 834.) In other words, the employee "would be entitled, in

15

the [workers'] compensation proceeding, to obtain a determination from the [WCAB] as to his claim that there was concurrent negligence on the part of the employer. [Citation.]" (*Id.* at p. 833.) However, regarding the case before it, the appellate court in *Gilford* explained that "[t]hree ways have been provided for an employer to effect subrogation against a third party: one of these is to allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees. [Citation.] To hold that the employee has the right to raise the issue of employer's negligence in his suit against the third-party tortfeasor would effectively destroy the employer's choice which is explicitly provided for in the legislation." (*Id.* at p. 834.) In sum, while *Gilford* supports appellant's argument in this case that the WCAB has exclusive jurisdiction over the issue of employer negligence when the issue is asserted by the employee, *Gilford* does not support appellant's further contention that respondent cannot pursue its choice of utilizing a lien and seeking enforcement of the lien in court.

For similar reasons, appellant's reliance on *Hone* is unpersuasive. In *Hone*, the appellate court affirmed the trial court's order granting a lien in favor of the workers' compensation carrier after the employee prevailed in a jury trial against the third party tortfeasor. (*Hone*, *supra*, 59 Cal.App.3d at pp. 521, 522, 531.) In the instant case, appellant relies on the following statement by the appellate court in *Hone*: "The jurisdiction of the WCAB to determine the validity of the employer's lien, where it is not the third party tortfeasor but the injured employee who seeks to prove employer negligence is exclusive. [Citation.]" (*Id.* at p. 527.)

However, in *Hone*, similar to *Gilford*, the appellate court *rejected* the employee's attempt to inject the issue of employer misconduct in the trial court to defeat the lien. (*See Hone*, *supra*, 59 Cal.App.3d at p. 524.) The appellate court in *Hone* explained, "In the instant case the complaint-in-intervention had been dismissed without prejudice and the case had reverted to the original posture with a lien on file. Thus, in the instant case if

16

employee/plaintiff had the right to raise the issue of an employer's negligence merely to defeat the lien in his suit against a third-party tortfeasor it would effectively destroy the employer's choice of means of effecting subrogation against a third party explicitly provided for by statute, one of which is to allow the employee to prosecute the action against the third party himself and for the employer to subsequently apply for a first lien against the amount of the employee's judgment." (*Id.* at p. 527.) Thus, although as appellant points out the appellate court in *Hone* immediately thereafter stated that "[t]he jurisdiction of the WCAB to determine the validity of the employer's lien, where it is . . . the injured employee who seeks to prove employer negligence[,] is exclusive" (*ibid.*), the exclusive jurisdiction of the WCAB did *not* render the trial court in *Hone* an improper forum for adjudicating the lien based on the particular procedural posture in that case. Specifically, in *Hone*, "with the removal of the *Witt v. Jackson* issues" concerning employer negligence, the dismissal of the workers' compensation carrier's complaint-in-intervention, and the case having "reverted to the original posture with a lien on file," the employee was precluded from raising the issue of employer negligence to defeat the lien. (*Id.* at pp. 527, 528; see *id.* at p. 520.)

We are also not persuaded by appellant's reliance on *Carrabello*, *supra*, 2013 Cal.Wrk.Comp. P.D. Lexis 413, a WCAB panel decision.[7] In *Carrabello*, the employee filed a complaint against the third party, and the workers' compensation carrier filed a complaint in intervention against the third party. (*Carrabello*, *supra*, 2013 Cal.Wrk.Comp. P.D. Lexis 413, at p. *4.) In defense against both complaints, the third party alleged negligence by the employer. (*Ibid.*) The complaints were eventually dismissed after the third party reached a global settlement for $100,000 with the employee and the workers'

---

[7] Without citing any authority, appellant contends that *Carrabello*, a WCAB panel decision, "is binding upon" workers' compensation judges. However, "unlike the WCAB's en banc decisions, WCAB panel decisions are not binding on other WCAB panels or [workers' compensation judges]." (*Applied Materials v. Workers' Comp. Appeals Bd.* (2021) 64 Cal.App.5th 1042, 1093, fn. 25; see Cal. Code Regs., tit. 8, § 10325.)

compensation carrier. (*Id.* at pp. *4-*5.) The settlement agreement did not set forth how the proceeds would be apportioned between the employee and the workers' compensation carrier. (*Id.* at p. *5.) The workers' compensation carrier filed a notice of lien. (*Ibid.*) The employee and the workers' compensation carrier then tried to litigate the issue of employer negligence, but the trial court refused to hear the matter on the ground that it lacked jurisdiction because the complaints had been dismissed. (*Id.* at p. *6.) The workers' compensation carrier then filed a petition for disbursement of the settlement proceeds in the employee's pending workers' compensation proceeding. (*Ibid.*; see *id.* at pp. *3-*4.) The workers' compensation judge found that the WCAB had no jurisdiction over the matter either. (*Id.* at p. *6) The WCAB panel disagreed, determining that, at a minimum, it had concurrent jurisdiction with the trial court regarding the disbursement of the settlement funds, including the issue of employer fault, and that it (the WCAB panel) did not need to decide whether its jurisdiction was exclusive as the trial court had essentially made the decision for the WCAB by declining to exercise jurisdiction over the issue. (*Id.* at pp. *3, *10, *16, *17.)

Among other facts that make *Carrabello* distinguishable, the trial court in the instant case has not declined jurisdiction over the disbursement of funds under the parties' settlement agreement. Further, the record in the instant case reflects that the parties dispute the amount of expenses and/or attorney's fees incurred by appellant's counsel in the third party action to be deducted from respondent's portion of the settlement. As the *Carrabello* panel observed, Labor Code section 3860, subdivision (f) "creates an exception to the WCAB's exclusive jurisdiction over matters arising out of or incidental to the payment of compensation [citation], and grants the superior court jurisdiction over the issue of attorney

18

fees and expenses incurred in a third-party civil suit." (*Carrabello*, *supra*, 2013 Cal.Wrk.Comp. P.D. LEXIS 413, at p. *11, fn. omitted.)[8]

In addition to *Gilford*, *Hone*, and *Carrabello*, we understand appellant to also rely on *Roe*, *supra*, 12 Cal.3d 884. In *Roe*, the California Supreme Court held that when an employer appears before the WCAB seeking a credit against future workers' compensation benefits based upon an employee's settlement with a third party, the issue of the employer's negligence may be resolved by the WCAB. (*Roe*, *supra*, 12 Cal.3d at p. 892.) In discussing the credit statutes, the *Roe* court did state that Labor Code section 3861 "designates the appeals board as a forum for adjudicating the employer's untried claim for reimbursement or credit." (*Id.* at p. 890.) However, the court did not state that the appeals board had exclusive jurisdiction over the issue of employer reimbursement or the issue of employer fault. Instead, the California Supreme Court stated only that "both trial court and [workers'] compensation agency are bound to accept the other's prior adjudication of employer negligence but free to adjudicate the issue if it is yet unsettled," and that the *credit* statutes (such as Labor Code section 3861) "impose on the [WCAB] the task of adjudicating the negligence issue when no court has done so and it is raised as a bar to the employer's claim of offset." (*Id.* at p. 892.)

As appellant acknowledges, *Roe* involved an employer seeking credit, not reimbursement through a lien. As explained by *Hone*, another case relied on by appellant, *Roe* has been construed "to be limited to the situation where, in the WCAB forum, the

_____

[8] Labor Code section 3680, which provides that a settlement shall have deducted from it reasonable expenses—including costs of suit, attorneys' fees, and reimbursement to the employer for workers' compensation benefits—states in subdivision (f) that "[t]he *amount of expenses and attorneys' fees* referred to in this section shall, *on settlement of suit*, or on any settlement requiring court approval, *be set by the court*. In all other cases these amounts shall be set by the appeals board. Where the employer and the employee are represented by separate attorneys they may propose to the court or the appeals board, for consideration and determination, the amount and division of such expenses and fees." (Italics added.)

19

employee can defeat a 'credit' claimed by an employer for *future* compensation benefits by proving employer's negligence before that forum (WCAB).  [¶]  Here, unlike *Roe*, the trial court is the forum and there are no claims for a 'credit' as to *future* compensation benefits" in this action (*Hone*, *supra*, 59 Cal.App.3d at p. 526).  Instead, the claim is for reimbursement for past payments.

In sum, appellant fails to establish that the trial court is an improper forum for resolving the dispute over respondent's lien.

## C. *Anti-SLAPP Motion*

On appeal, appellant contends that the trial court erred in denying his anti-SLAPP motion because respondent's breach of contract claim arises from activity that is protected under section 425.16, and because respondent has not shown a probability of prevailing on its claim.  We will begin our evaluation of appellant's contentions with an overview of section 425.16, the anti-SLAPP statute, followed by a discussion of the applicable standard of review.

### 1.  Section 425.16

" 'Code of Civil Procedure section 425.16 sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . , which are brought to challenge the exercise of constitutionally protected free speech rights.' [Citation.]  A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail.  (Code Civ. Proc., § 425.16, subd. (b)(1).)" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

"Anti-SLAPP motions are evaluated through a two-step process.  Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.  (§ 425.16, subd. (b);

20

see § 425.16, subd. (e) [defining protected activity] . . . .)  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'  [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  "We review de novo the grant or denial of an anti-SLAPP motion.  [Citation.]" (*Id.* at p. 1067.)

## 2. Arising from Protected Activity

We first consider whether appellant met his burden to make the threshold showing that respondent's breach of contract claim arises from one of the section 425.16, subdivision (e) categories of protected activity.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*); see § 425.16, subd. (b)(1).)  Subdivision (e) of section 425.16 identifies four general categories of protected activities of petition or free speech.  Appellant contends that two of the categories are relevant here:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (§ 425.16, subd. (e).)  Litigating claims through the workers' compensation process, including before the WCAB, may qualify as an "executive . . . proceeding" or "other official proceeding authorized by law," or a proceeding in front of an "executive . . . body" within the meaning of subdivision (e) of section 425.16.  (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 468, 477 (*Premier Medical*) ["litigating lien claims through the workers' compensation process" may be protected activity]; see *id.* at p. 474 ["the constitutional right to petition includes the basic act of seeking administrative action"].)

The California Supreme Court has stated the standard for determining whether the defendant's wrongful act, as alleged in the complaint, arises from activity protected under section 425.16, subdivision (e).  "[T]he statutory phrase 'cause of action . . . arising

21

from' means . . . that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).) A plaintiff's "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of . . . ." (*Park*, *supra*, 2 Cal.5th at p. 1060.)

"[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based* on conduct in exercise of those rights.' [Citations.]" (*City of Cotati*, *supra*, 29 Cal.4th at pp. 76-77.) Further, "a claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. [Citation.] That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id.* at p. 78.) A party's subjective intent in filing the litigation "is not relevant under the anti-SLAPP statute." (*Ibid*.)

"Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . . ." [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the

defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063, italics omitted.)

"In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.]" (*City of Cotati*, *supra*, 29 Cal.4th at p. 79.)

In this case, respondent alleges in its complaint that appellant breached the settlement agreement by his "failure to perform under the [settlement] agreement by payment to [respondent] of its workers' compensation benefits." (Some capitalization omitted.) In its prayer for relief, respondent seeks "payment of its workers' compensation lien." (Some capitalization omitted.)

We determine that the cause of action for breach of contract does not allege activity protected under section 425.16, subdivision (e). The activity that underlies respondent's cause of action for breach of contract is appellant's failure to pay the lien with the settlement funds.[9] Appellant's petitioning activity in the workers' compensation proceeding is not the basis for the breach of contract claim.

On appeal, appellant contends that he "disputes the amount claimed in [respondent's] lien," that he "petitioned the WCAB to determine the amount owed," and that "[p]etitioning the WCAB is protected activity under the" anti-SLAPP statute. Appellant argues that respondent filed its breach of contract action thereafter because it did not want to wait for the WCAB to determine the lien amount. Appellant contends that the two proceedings—court and WCAB—are "duplicitous" because "the same issues that would be under consideration in this lawsuit are already under consideration because of [appellant]

---

[9] Respondent contends that its breach of contract claim is based on appellant's "refusal to disburse the amount of [respondent's] lien" *and* appellant's "refusal to negotiate a settlement of [the] lien." The complaint alleges that appellant breached the settlement agreement only by his failure to pay. Even assuming, however, that the breach of contract claim may be construed to include appellant's refusal to negotiate a settlement of the lien, appellant fails to establish that a refusal to negotiate constitutes protected activity under the anti-SLAPP statute.

23

petitioning the WCAB" and respondent is seeking in this action "the same relief that will be adjudicated by [the] WCAB."

We are not persuaded by appellant's argument that respondent's breach of contract claim arises from protected activity by appellant. We find *City of Cotati* instructive. In that case, the California Supreme Court considered "whether a municipality's state court action for declaratory relief respecting the constitutionality of a mobilehome park rent stabilization ordinance, filed in response to a federal court declaratory relief action brought by park owners respecting the same ordinance," was subject to an anti-SLAPP motion. (*City of Cotati*, *supra*, 29 Cal.4th at p. 71.) "[T]he gravamen of the [municipality's] state court action [was] the same as that of [the park owners'] federal court action," namely the constitutionality of the city ordinance. (*Id.* at p. 79; see *id.* at p. 80.) The municipality "concede[d] that its purpose in filing the state court action was to gain a more favorable forum in which to litigate the constitutionality of its mobilehome park rent stabilization ordinance" and "that in filing the state court action it intended subsequently to seek to persuade the federal court to abstain from hearing [the park owners'] suit." (*Id.* at p. 73.) The California Supreme Court concluded that the municipality's state court lawsuit "did not arise from" the park owners' protected activity, that is, the federal lawsuit. (*Id.* at p. 80.) The California Supreme Court explained that "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*Id.* at pp. 76-77.) Further, "[t]hat a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id.* at p. 78.) The court stated that "a responsive but independent lawsuit" may "arise from the same transaction or occurrence alleged in a preceding lawsuit, without necessarily arising from that earlier lawsuit itself. [Citation.]" (*Id.* at p. 78.) The court concluded that the municipality's "cause of action therefore was not one arising from [the park owners'] federal suit," and accordingly the municipality's action was not subject to an anti-SLAPP motion. (*Id.* at p. 80.)

24

In this case, although respondent's breach of contract action was filed after appellant's petitioning activity in the workers' compensation arena, and even assuming appellant's petitioning activity triggered respondent's breach of contract claim, we determine that respondent's breach of contract claim did not "aris[e] from" appellant's petitioning activity (§ 425.16, subd. (b)(1)). Rather, the basis for respondent's breach of contract claim, as alleged in the complaint, is appellant's failure to pay.

We are not persuaded by appellant's contention that *Premier Medical*, *supra*, 136 Cal.App.4th 464 dictates a different result in this case. In *Premier Medical*, the plaintiffs were a medical management entity and physicians affiliated with it. (*Id.* at p. 469.) "[M]edical providers who treat employee injuries covered by the [Workers' Compensation Act] may file lien claims for the cost of their services directly with the WCAB. [Citations.]" (*Id.* at p. 468.) "If the insurer contests the bill, payment is due only if ordered by the WCAB. [Citations.]" (*Ibid.*) In *Premier Medical*, the plaintiffs submitted physicians' bills to the defendant insurers and employers and filed liens in numerous workers' compensation cases before the WCAB. (*Id.* at pp. 468, 469, 470.) The defendant insurers disputed the charges, contending that the plaintiffs "were unlawfully practicing medicine, chiropractic treatment, and physical therapy as a result of illegal fee-sharing" and "were illegally referring business and making improper and excessive charges." (*Id.* at p. 469.) The defendant insurers successfully sought consolidation of the cases pending before the WCAB. (*Ibid.*)

The plaintiffs thereafter filed a civil action against the defendant insurers alleging an antitrust violation, racketeering, unfair business practices, and various tort claims. (*Premier Medical*, *supra*, 136 Cal.App.4th at pp. 470-471.) "The gravamen of the complaint [was] that after [the plaintiffs] submitted . . . physicians' bills to defendants for payment, and filed liens in numerous workers' compensation cases before the WCAB, defendants collectively conspired to contest, delay, and avoid payment of these bills and liens." (*Id.* at p. 470.) Some of the defendant insurers filed an anti-SLAPP motion to the plaintiffs' complaint,

contending that the complaint was "based entirely on the defendants' constitutional right to petition the WCAB." (*Id.* at p. 471.) The defendants argued that "the entire process of submitting bills and lien claims for medical services in pending WCAB cases is inherently part of the WCAB litigation process," citing caselaw that "held that claims by workers' compensation medical providers for damages arising out of insurers' failure to make full and timely payment on their lien claims came within the exclusive remedy provisions of the [Workers' Compensation Act]." (*Id.* at p. 473.) The appellate court agreed, determining that the civil complaint was subject to an anti-SLAPP motion because "the gravamen of [the plaintiffs'] action ar[o]se[] from the activity of defendants in litigating lien claims through the workers' compensation process." (*Id.* at p. 477.)

In contrast to the plaintiffs' complaint in *Premier Medical* which alleged antitrust, racketeering, unlawful business practice, and other claims "aris[ing] from the activity of defendants in litigating lien claims through the workers' compensation process" (*Premier Medical*, *supra*, 146 Cal.App.4th at p. 477), respondent's sole breach of contract claim in the instant case is not the activity of appellant in litigating a lien through the workers' compensation process. Rather, respondent's breach of contract claim is based on appellant's failure to pay the lien under the settlement agreement. Further, as we have explained, unlike *Premier Medical* which involved an issue within the exclusive jurisdiction of the WCAB, appellant fails to demonstrate that the WCAB has exclusive jurisdiction over respondent's breach of contract claim.

Appellant also relies on an opinion from this court, *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc*. (2014) 230 Cal.App.4th 859 (*Old Republic*), which involved some of the same parties as *Carrabello*, *supra*, 2013 Cal.Wrk.Comp. P.D. Lexis 413.[10] As recited above in our description of the facts of

---

[10] This court in *Old Republic* was aware of the existence of the WCAB panel decision in *Carrabello*, *supra*, 2013 Cal.Wrk.Comp. P.D. Lexis 413, but this court had no occasion

*Carrabello*, the employee's action against a third party settled, with the third party reaching a global settlement for $100,000 with the employee and the workers' compensation carrier. (*Carrabello*, *supra*, 2013 Cal.Wrk.Comp. P.D. Lexis 413, at pp. *4-*5.) A notice of lien had been filed by the workers' compensation carrier. (*Id.* at p. *5.) However, the settlement agreement did not set forth how the proceeds would be apportioned between the employee and the workers' compensation carrier. (*Ibid.*) As explained in this court's opinion in *Old Republic*, the settlement check was made payable to the employee, his attorney, and the workers' compensation insurer. (*Old Republic*, *supra*, at p. 863.) The employee's attorney and the workers' compensation carrier signed a stipulation requiring the settlement money to be deposited into an account, with the signatures of both parties required to withdraw any money. (*Ibid.*) However, the money was disbursed to the employee without the workers' compensation carrier's signature or approval, so the carrier filed a civil action against the employee's attorneys, alleging breach of contract among other causes of action. (*Id.* at pp. 864, 865.)

Appellant contends that "[t]he dispute in this case is similar to this Court's hypothetical from *Old Republic*, where the cause of action would have been within the [a]nti-SLAPP statute's protection." In *Old Republic*, this court explained that "[i]*f*" the breach of contract and other "targeted causes of action 'all ar[o]s[e] from [the] stipulation' which resulted in the deposit of settlement funds in [the attorneys'] trust account," then this would bring the causes of action within the anti-SLAPP statute's protection. (*Old Republic*, *supra*, 230 Cal.App.4th at p. 867, italics added.) This court explained that "[t]he function of the stipulation was to hold the settlement funds in stasis pending an adjudication of Old Republic's right to reimbursement," which was an issue that, at the time, was under consideration in the third party action. (*Ibid.*) This court determined, however, that the breach of contract and other causes of action at issue did *not* arise from the stipulation. This

to consider, and expressed no view on, whether *Carrabello* was correctly decided. (*Old Republic*, *supra*, 230 Cal.App.4th at p. 865, fn. 3.)

court explained, "The causes of action at issue here refer to, and may depend on, [the employee's attorneys'] having entered into the stipulation, which was itself protected conduct; but [the plaintiff workers' compensation carrier] do[es] not assert that there was anything wrongful about that conduct." (*Id.* at p. 869.) In other words, "entry into [the stipulation] is not the injurious conduct alleged." (*Ibid.*) Rather, the plaintiff workers' compensation carrier's "injury arose from [the employee's attorneys'] withdrawal of the funds that were the subject matter of the stipulation. That is the conduct by which the defendants allegedly breached the contract between the parties . . . . It is that conduct from which these causes of action must be held to arise. For purposes of the [anti-SLAPP] statute, the stipulation must be viewed as incidental. [Citation.]" (*Ibid.*) This court ultimately concluded that anti-SLAPP motion was properly denied as to the breach of contract cause of action. (*Id.* at pp. 862, 865-866.) Similarly, in the present case, the allegedly injurious conduct by appellant is the failure to pay money; "entry into [the settlement agreement] is not the injurious conduct alleged." (*Id.* at p. 869; cf. *Navellier*, *supra*, 29 Cal.4th at p. 90 [where release agreement not to sue was allegedly breached when the party filed claims in federal court, the breach of contract claim fell "squarely within the ambit of the anti-SLAPP statute's 'arising from' prong" as the party was "being sued because of the [clams] he filed in federal court"].)

In sum, appellant has not met his burden of showing that respondent's breach of contract claim "aris[es] from" protected activity by appellant. (§ 425.16, subd. (b)(1); see § 425.16, subd. (e); *Park*, *supra*, 2 Cal.5th at p. 1061.) In view of our conclusion that appellant's anti-SLAPP motion was properly denied, we do not reach the issue of whether, if the motion should have been granted, respondent should be given leave to amend. Further, in view of our conclusion that appellant failed to meet the first step of the anti-SLAPP analysis (see *Park*, *supra*, at p. 1061), we do not reach the second step regarding whether respondent "established that there is a probability that [it] will prevail on the claim" (§ 425.16, subd. (b)(1)).

## IV.  DISPOSITION

The order denying appellant Alejandro Chavero Velazquez's special motion to strike under Code of Civil Procedure section 425.16 is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.



WE CONCUR:




_____
DANNER, J.




_____
BROMBERG, J.




*NorGUARD Insurance Company v. Chavero Velazquez*
**H050725**